[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This products liability case comes before this Court pursuant to a Rule 12(b)(3) motion to dismiss for improper venue. Michael Weinig, Inc. (hereinafter "Defendant")[1] requests that this Court dismiss the claim filed by Employer's Mutual Casualty Company (hereinafter "Plaintiff")[2] because the incident for which the Plaintiff now seeks relief must be litigated in North Carolina in accordance with a contractual forum selection clause. The Defendant urges this Court to find that Rhode Island is an inappropriate venue in which to litigate this case because the applicable forum selection clause mandates that venue ". . . shall only be in Mecklenburg County, North Carolina." In response to the Defendant's motion, the Plaintiff has filed a timely objection and argues that Rhode Island is the appropriate forum to exercise jurisdiction because the clause is ambiguous and does not encompass a claim for negligence. Even if this Court finds that the clause is unambiguous and pertains to the asserted claim, the Plaintiff maintains that the forum selection clause should not be enforced because it is unreasonable when considered in light of the totality of the circumstances.
 I. FACTS
It is undisputed that on December 19, 1999, Corrugated Pallet Co. and the Defendant[3] entered into a contract pertaining to the purchase of a piece of machinery known as a Raimann KM Gang Rip Saw. From the evidence that has been presented to the Court, the agreement appears to be embodied in a two page document with the first page entitled "Purchase Order and Contact" [sic] and the second entitled "Terms of Sale." The Purchase Order is signed by both the seller and the purchaser and delineates the time frame for delivery, the terms of payment, and the purchase price for the saw. The contract, as agreed to by the parties, also includes a clause, which states:
 "All payments shall be made only to RAIMANN USA, Inc., Charlotte, North Carolina. In case of payment by bill or draft, all bank charges shall be borne by Purchaser. This order shall be on held, [sic] to be accepted only after confirmation in writing by RAIMANN USA, Inc., Charlotte, North Carolina. The place of settlement, venue, and jurisdiction for all matters, claims, or disputes, including delivery and payment shall only be in Mecklenburg County, North Carolina. Purchaser expressly acknowledges that no matter how affixed, attached or made a part of other real or personal property, this is a conditional sale and all of the products shall remain the property of seller until payment in full (said payment to include the sales price, interest, costs, expenses, and attorney's fees, if applicable) has been received by Seller."
The clause appears in legible print on the bottom half of the Purchase Order directly above the signatures of the parties.
In addition to the forum selection clause contained in the Purchase Order, the "Terms of Sale" document includes the following critical paragraphs:
 "17. Choice of Law. This Agreement and any dispute or claim relating to it shall in all respects be governed by and construed according to the laws of the State of North Carolina, excluding its conflict of law principles. . . ."
 "18. Choice of Forum, Venue, and Consent to Jurisdiction. Except as provided below in this Section, and with respect to an action instituted by Seller for equitable relief, including, without limitation, an action for temporary or permanent injunctive relief, Seller and Purchaser agree that the General Courts of Justice of the State of North Carolina and the United States District Court for the Middle District of North Carolina shall constitute the exclusive forums for the adjudication of any and all disputes or controversies arising out of or relating to this Agreement or the Products. Purchaser consents to the exercise of jurisdiction over it by such courts with respect to any such dispute or controversy, and Purchaser waives any objection to the assertion or exercise by such courts of such jurisdiction. . . ."
Paragraphs seventeen (17) and eighteen (18) are found at the bottom of the "Terms of Sale."
The complaint alleges that on June 25, 2001, approximately eighteen months after the parties entered into the sales agreement, a fire broke out at Corrugated Pallet's business in Bristol, Rhode Island The fire has allegedly caused damage to Corrugated Pallet's premises and caused Corrugated Pallet to ". . . expend a large amount of money to repair, clean, and/or replace said property . . ." Complaint, ¶ 9. It is further alleged that the fire was caused by Defendant's negligently failing to equip the product with an appropriate guard, and/or failing to properly instruct the purchaser relative to use of a block or guard while operating the saw. Complaint, ¶¶ 7-9.[4]
 II. ANALYSIS A. Is the language of the forum selection clause ambiguous?
General principles of contract law require that "unless the terms of a written contract are ambiguous, it should be interpreted as a matter of law in accordance with its plain terms." Rhode Island Depositors Economic Protection Corp. v.Coffey and Martinelli, Ltd., 821 A.2d 222, 226 (2003) (citingClark-Fitzpatrick, Inc./Franki Foundation Co. v. Gill,652 A.2d 440, 443 (R.I. 1994)). "In determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary, and usual meaning." Samos v. 43 E. Realty Corp., 811 A.2d 642, 643 (R.I. 2002) (citing Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I. 1996)). The Rhode Island Supreme Court has stated that "a contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." Id. Therefore, "in the absence of an ambiguity, courts afford the term its plain, ordinary, and literal meaning, enforcing what is deemed to be the objective manifestation of the parties' expectations."American Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1195 (R.I. 2002).
The Court finds that the forum selection clause unambiguously pertains to claims for negligent design and negligent failure to warn, the claims set forth in Plaintiff's complaint. The "Purchase Order and Contact" [sic] requires that "all matters, claims or disputes" be litigated in North Carolina. Paragraph 18 of the Terms of Sale uses even broader language, requiring litigation in North Carolina of "any and all disputes or controversies arising out of or relating to the Agreement orthe Products" (emphasis added). Certainly, a negligence claim of the type asserted herein unmistakably "relates to" the product which was the subject matter of the sale. Accordingly, the parties agreed to resolve all such issues in the courts of North Carolina.
Although the language in the contract might be characterized as "boilerplate," the mere fact that the clause is contained in a pre-printed form contract does not invalidate the provision.See Northwestern Nat'l. Ins. Co. v. Donovan, 916 F.2d 372, 377 (7th Cir. 1990). See also Lyall v. DeYoung,42 Wash.App. 252, 256, 711 P.2d 356, 359 (Wash. App. 1985) (it is not the law that one must bargain for each and every written term of a contract); Reynolds Indus., Inc. v. Mobil Oil Corp.,618 F. Supp. 419, 423 (D.Mass. 1985) (simply because the provision was part of what is called the `boilerplate' section of the contract does not in itself make it unfair). Our Supreme Court has also stated: "A party who signs an instrument manifests his assent to it and cannot later claim that he did not read the instrument or that he did not understand its contents." F.D. McKendall LumberCo. v. Kalian, 425 A.2d 515, 518 (R.I. 1981). Accordingly, this Court concludes that the claims set forth by the Plaintiff in this case are subject to the forum selection language.
 B. Is the forum selection clause enforceable?
The Rhode Island Supreme Court has recognized that forum selection clauses are prima facie valid. Tateosian v. CelebrityCruise Lines, Ltd., 768 A.2d 1248, 1250 (R.I. 2001). Although forum selection clauses are prima facie valid, they are still subject to judicial scrutiny for fundamental fairness. Id.
(citing The Bremen et al v. Zapata Off-Shore Co., 407 U.S. 1,92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); Carnival Cruise Lines,Inc. v. Shute, 499 U.S. 585, 590, 111 S.Ct. 1522, 1525,113 L.Ed.2d 622, 629 (1991) (forum selection clauses are subject to judicial scrutiny)); see also Docksider, Ltd. v. SeaTechnology, Ltd., 875 F.2d 762, 764 (9th Cir. 1989) ("The prevailing rule is clear . . . that where venue is specified with mandatory language the clause will be enforced"); Annotation, Francis M. Dougherty, J.D., Validity of Contractual ProvisionLimiting Place or Court In Which Action May Be Brought, 31 A.L.R. 4th 404 (1984).
In the Zapata case, the United States Supreme Court held that forum selection clauses are "prima facie valid . . ." and should be upheld unless it is shown to be "unreasonable" by the resisting party under the circumstances. Zapata, 407 U.S. at 10. To convince a court that a forum selection clause should not be enforced, a resisting party bears a heavy burden. Zapata,
407 U.S. at 17; Tateosian, 768 A.2d at 1250. The party resisting enforcement of a forum-selection clause must convince the court that "a set of qualitative factual circumstances" warrant denial of enforcement. D'Antuono v. CCH ComputaxSystems, Inc., 570 F. Supp. 708, 712 (D.R.I. 1983). In theZapata case, the Supreme Court stated that the key factors in finding a forum clause to be unenforceable would be evidence of "fraud, undue influence, or overweening bargaining power;" contravention of "a strong public policy of the forum in which the suit is brought;" or facts and evidence establishing that the chosen forum is seriously inconvenient for the trial of the action. 407 U.S. at 12, 15-16.
Following Zapata, the United States District Court for the District of Rhode Island has applied a nine factor test to determine whether a forum selection clause was reasonable and enforceable. D'Antuono, 570 F. Supp. at 711-712. The nine factor test has also been adopted by other Justices of this Court. SeeGroff v. America Online, Inc., 1998 R.I. Super. LEXIS 46 (1998).
The nine factors weighed in the D'Antuono case are as follows:
 "1) Identity of the law that governs the contract;
 2) Place of execution of the contract;
 3) Place where transactions are to be performed;
 4) Availability of remedies in the designated forum;
 5) Public policy of the initial forum state;
 6) Location of the parties, the convenience of the prospective witnesses, and the accessibility of evidence;
 7) Relative bargaining power of the parties and the circumstances surrounding their dealings;
 8) Presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances; and
 9) The conduct of the parties."
D'Antuono, 570 F. Supp. At 711-712. The Court therein stated "While each of these factors has some degree of relevance and some claim to weight, there are no hard and fast rules, no precise formulas. The totality of the circumstances, measured in the interests of justice, will and should ultimately control.Id. at 712.
In this case, the "totality of the circumstances" and the "interests of justice" weigh in favor of enforcing the forum selection clause. Plaintiff has brought forth no facts or circumstances to suggest that the seller of this product exhibited any fraud or undue influence, or exerted any disproportionate bargaining power. The Court has nothing before it to suggest that the business that sold the equipment, and Plaintiff's subrogor that purchased the equipment, operated other than at arms length and in a commercially reasonable manner. Because the damage to the Plaintiff's property was sustained in Rhode Island, it is likely that witnesses will be those who used the product and observed the damage in Rhode Island, as well as representatives of the manufacturer, which is located in North Carolina.
Finally, the Court must weigh the availability of remedies in the designated forum (North Carolina), and consider the public policy of the initial forum State (Rhode Island). Unlike Rhode Island, North Carolina applies the doctrine of contributory negligence in tort cases. Bosley v. Alexander, 442 S.E.2d 82, 83, 114 N.C. App. 470, 471 (1994). In the Bosley case, the North Carolina Appellate Court explicitly stated, "The doctrine of contributory negligence, which is a creature of common law followed in this State since Morrison v. Cornelius, 63 N.C. 346
(1869), remains the law of this State until our Supreme Court overrules Morrison." Bosley, 442 S.E.2d at 83; see alsoCorns v. Hall, 112 N.C. App. 232, 435 S.E.2d 88 (1993); Cannonv. Miller, 313 N.C. 324, 327 S.E.2d 888 (1985). The Appellate Court also noted that because there is no statutory basis for the doctrine in North Carolina, the General Assembly could legislatively adopt the doctrine of comparative negligence and thereby abrogate the Supreme Court's ruling in Morrison.Bosley, 442 S.E.2d at 471. Neither the North Carolina legislature nor the Supreme Court of North Carolina has acted to align itself with the majority of states which have adopted the more enlightened theory of comparative negligence.[5]
However, even were this Court to refuse to enforce the "forum selection clause" contained in the agreement, the contract also contains the following "choice of law" clause:
 "17. Choice of Law. This Agreement and any dispute or claim relating to it shall in all respects be governed by and construed according to the laws of the State of North Carolina, excluding its conflict of law principles."
According to the above, the substantive law of North Carolina will apply, even if the case is tried in a Rhode Island forum.
The enforceability of "choice of law" clauses in contracts for the sale of goods is governed by the Uniform Commercial Code. The Uniform Commercial Code and especially G.L. 1956 § 6A-1-105
(1956), Territorial Application of title 6A — Parties' power to choose applicable law," as adopted in Rhode Island, provides that:
 "(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement title 6A applies to transactions bearing an appropriate relation to this state." (Emphasis added.)
The plain language of the statute delineates that the flexibility permitted by § 6A-1-105 is not unlimited, and does require that the transaction bear a "reasonable relation" to the state whose law has been chosen to apply. See Schofield v. French,36 F. Supp.2d 481, 489 (D.R.I. 1999), aff'd 215 F.3d 1312 (1st
Cir 2000). If the "reasonable relation" is established, however, the parties' choice of law will be upheld. Id.
In this case, there is no question that North Carolina bears a reasonable relation to the transaction that is the subject of this suit. While the machinery was located in Rhode Island, and the accident occurred in Rhode Island, the Defendant is located in North Carolina and sold the Rip Saw that allegedly caused this accident. The Court cannot, therefore, find that the parties' choice of law selection is not reasonably related to North Carolina.
Even if the Court were to refuse enforcement of the contractual forum selection on the basis of the D'Antuono factors, the Court would also have to invalidate the contractual choice of law provision under the UCC which is in effect in both Rhode Island and North Carolina in order to achieve the result desired by the Plaintiff.[6] This Court would be over-reaching were it to invalidate both the choice of forum as well as the choice of law clauses in the contract in order to allow the Plaintiff to escape the potential applicability of North Carolina's established tort principles.
 III. CONCLUSION
Although the determination of these claims under the contributory negligence standards in effect in North Carolina could adversely affect the Plaintiff, this Court, under applicable analysis, must enforce the unambiguous terms of a contract entered into at arm's length between two business entities.
Accordingly, the Defendant's motion to dismiss for improper venue under RCP 12(b)(3) is hereby granted. The parties will present an appropriate order.
[1] Michael Weinig, Inc. entered a limited appearance when filing this motion solely for the purpose of contesting whether venue is proper in this Court.
[2] The Plaintiff has filed this action as the subrogee of its insured, The Corrugated Pallet Co. (hereinafter "Corrugated Pallet").
[3] The Defendant, Michael Weinig, Inc., was not party to the initial transaction with the Plaintiff, but is joined as successor in interest to RAIMANN, USA, Inc., the original seller.
[4] Although not supported by affidavit, nor set forth in the complaint, the Plaintiff contends that the seller initiated contact with Corrugated Pallet in Rhode Island, conducted training in Rhode Island, and had a technical representative install the saw in Rhode Island Defendant does not dispute these contentions, but in light of the parties' contractual choice of forum, these facts are not determinative.
[5] Rhode Island, to the contrary, has long ago abolished the "all or nothing" approach of contributory negligence. See G.L. 1956 § 9-20-4; Raymond v. Jenard, 120 R.I. 634, 390 A.2d 358
(1978).
[6] N.C. Gen. Stat. § 25-1-105 (2004).